[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: RESPONDENT'S PETITION TO REVOKE A COMMITMENT ANDPETITIONER'S PETITION TO EXTEND A COMMITMENT
On June 12, 1996, Barbara P., (hereinafter respondent or mother), mother of the minor child Suzanne J., (hereinafter Suzanne), filed a petition to revoke the commitment of her daughter to the Commissioner of the Department of Children and Families, (hereinafter petitioner). On June 17, 1996, the petitioner filed a petition to extend the commitment of Suzanne. By agreement of the parties the petitions were heard together on March 7, 1997.
Suzanne was originally committed to the custody of the petitioner after a neglect trial that concluded on August 19, 1993. This commitment was first extended on January 10, 1995 by agreement of the parties for a period of eighteen months effective February 19, 1995. On August 6, 1996, the commitment was extended pending further order of the court and without prejudice until the petitions could be heard. A trial date was set for January 20, 1997 and later continued to March 7, 1997.
The record reveals the following: on June 7, 1993, the Department of Children and Families, (hereinafter DCF), received a referral that Suzanne, then age 12, had informed her school nurse that her step-father, Paul P., the respondent's husband, had been touching her breasts and genitals and had engaged her in CT Page 4196 oral sex. The child stated these incidents had occurred at least once every two months in the year preceding her disclosure. When confronted with the allegations that day, mother responded by saying that she did not believe her daughter. She refused to seek to remove her husband from the home. DCF obtained a 96 hour hold on June 7, 1993 and on June 8, 1993 an order of temporary custody issued. Suzanne has been in the custody of the petitioner since that date. After a three day trial the court found, by a fair preponderance of evidence, on August 19, 1993, that Suzanne was neglected and abused within the meaning of the law and by way of disposition ordered that she be committed to the petitioner for a period of up to 18 months.
The current petitions, which have been combined for purposes of trial, raise the issue of the appropriateness of continuing this commitment which, as noted, was extended once previously. Both petitions are dispositional in nature based upon the prior (1993) adjudication and the court's role had to decide, as to the extension petition, whether the extension is in the best interest of the child based upon a fair preponderance of the evidence. Conn. Pr. Bk. § 1045.1(1). The respondent in the original petition, who seeks to revoke the commitment, has the burden of proof that no cause for commitment exists. If the burden is met, the petitioner in the original action has the burden of proof that revocation would not be in the best interest of the child. Each burden is by a fair preponderance of the evidence. Conn. Pr. Bk. § 1045.1(2).
Because the combined hearing of March 7, 1997 is dispositional in nature the court has considered relevant and material testimony and exhibits of events up to and including the date of trial. Conn. Pr. Bk. § 1043.1(1).
At the hearing the court finds the following facts:
Suzanne has lived in the same foster home since July 1993. It is located in the neighborhood of her former residence. Suzanne has adjusted well to her placement and is doing well academically in high school. She is happy in her surroundings and wishes to remain there.
At the conclusion of the neglect trial in August of 1993, the court recommended visitation between mother and daughter at the discretion of the child's therapist. In November of 1993, Cynthia Pearson, a clinical social worker, became Suzanne's therapist. In CT Page 4197 January of 1994 she wrote to DCF advising against visitation because Suzanne was suffering from post traumatice stress disorder, depression, and anxiety. On February 17, 1994 Ms. Pearson wrote again urging DCF to suspend supervised visitation with mother, which had apparently begun, because of Suzanne's condition, which had worsened. In December of 1994, she recommended to DCF that visitation between mother and daughter await the sentencing of stepfather. On December 13, 1994, Paul P. was sentenced to seven years in prison, execution suspended, and he was placed on probation for three (3) years. He was ordered to have no contact with Suzanne, direct or indirect, unless permitted by probation.[1]
Supervised visitation with mother resumed in January of 1995. Suzanne experienced depression and anxiety after some visits according to her therapist. Later in the year visitation became unsupervised. In December of 1995, while visiting mother at mother's residence in Sterling, Suzanne saw her stepfather enter the driveway in a vehicle as she and her mother were leaving the premises. (Mother continues to reside with stepfather in Sterling and has done so continuously since the report of his sexual abuse of his stepdaughter and subsequent conviction.) Earlier that same day mother had asked Suzanne to sign Christmas gift tags addressed to her stepfather and Suzanne did so.
Suzanne reported these incidents to her therapist who reported the matter to DCF on its careline and followed with a written report of suspected neglect/abuse. The situation caused Suzanne considerable stress at the time according to Ms. Pearson. She has not visited her mother at her residence since then. In April of 1996, Ms. Pearson and Suzanne discontinued their counseling sessions. Ms. Pearson felt Suzanne, then 15, should get on with her life although she felt family counseling was needed before reunification could be considered.
In June of 1995, DCF filed an ongoing treatment plan regarding Suzanne that, for the first time, recommended by way of a permanency plan that Suzanne remain in permanent foster care. Two earlier treatment plans, which are filed about every six months, had recommended a return home as the goal of her permanency plan.
In changing its goal for Suzanne in the treatment plan of June 1, 1995, DCF cited mother's refusal to believe Suzanne's allegations (re stepfather) and mother's inability to insure CT Page 4198 Suzanne's safety were she to return home since mother was residing with steptather. The treatment plan of June 1, 1996, also recommended permanent foster care as the goal of its permanency plan for Suzanne, noted the incidents of December 1995 at the home and Suzanne's refusal to continue visitation with mother.
On December 3, 1996, an administrative hearing was held at the Norwich DCF office and changes were made in the treatment plan dated June 1, 1996. DCF and mother agreed that visitation issues would be mediated by a social worker from a local youth service agency. Mother asked that DCF make no other attempt to contact her or to ask her to take part in counseling. (Mother has recently rejected the proposed mediator. Thus no visitation has taken place with Suzanne and only telephone contact has occurred between mother and daughter in the last few months.)
After hearing the parties on March 1, 1997, the court concludes the respondent mother has failed to establish by a fair preponderance of the evidence that the commitment of Suzanne to the petitioner should be revoked pursuant to C.G.S. § 46b-129(g). Conversely, the court concludes the petitioner has proved by a fair preponderance of the evidence that the commitment of Suzanne should be extended for a period not to exceed twelve months under C.G.S. § 46b-129(e).
Suzanne is now sixteen years old and wishes to remain in foster care according to a recent (February `97) conversation with her current social worker, Mr. Days. She is doing well in school and in her foster home. The result of revocation of her commitment would likely uproot her form this environment at a critical time in her life. Mother has advanced no plan for independent living for Suzanne and no evidence has been introduced indicating Suzanne can support herself. The possibility that she would be forced to return to her mother's home (where her convicted abuser also resides) is a disturbing one.
Accordingly, the court concludes that it is in Suzanne's best interest that her commitment to the petitioner be extended for the statutory twelve month period, effective this date. The court further concludes that continuing efforts at reunification by DCF would not be appropriate for the following reasons; mother continues to reside with her husband, a convicted abuser of her daughter and Suzanne has no desire to return there although she CT Page 4199 is willing to visit with her mother at a location on other than mother's residence in the presence of a mediator.
Potter, J.